**Robert Jeff ADAMS, Sr., Personal Representative for the Estate of Donald Demasco Adams, Sr., Plaintiff–Appellee,**

v.

**ST. LUCIE COUNTY SHERIFF'S DEPARTMENT, Robert C. Knowles, Sheriff, Donnie Ingram, Defendants,**

**J.M. Lindsey, Robert Soesbe, Defendants–Appellants.**

No. 91–5137.

United States Court of Appeals, Eleventh Circuit.

Aug. 25, 1993.

Julius F. Parker, Jr., Tallahassee, FL, for defendants-appellants.

Evan I. Fetterman & Assoc., Salvatore Scibetta, North Palm Beach, FL, for plaintiff-appellee.

Before TJOFLAT, Chief Judge, FAY, KRAVITCH, HATCHETT, ANDERSON, EDMONDSON, COX, BIRCH, DUBINA, BLACK and CARNES, Circuit Judges, and HILL *, Senior Circuit Judge.

---

* Senior U.S. Circuit Judge James C. Hill has elected to participate in this decision pursuant to 28 U.S.C. § 46(c).

** In effect, the majority holds that common sense is insufficient to inform law enforcement officers

PER CURIAM:

For a statement of the facts which we have assumed to be true for our review of the denial of summary judgment, see 962 F.2d 1563. On the reasoning set out in the dissenting opinion of Judge Edmondson, 962 F.2d at 1573–1579, the district court's order denying summary judgment, 759 F.Supp. 795 (S.D.Fla.1991), is REVERSED.

HATCHETT, Circuit Judge, dissenting, in which KRAVITCH, Circuit Judge, joins:

In *Tennessee v. Garner*, 471 U.S. 1, 11, 105 S.Ct. 1694, 1701, 85 L.Ed.2d 1 (1985), the Supreme Court held that the use of deadly force to apprehend a fleeing felon constitutes an unreasonable seizure under the fourth amendment, unless law enforcement officers have probable cause to believe the felon poses a threat of serious bodily harm to the officers or to others. Even prior to *Garner*, however, it was clear that law enforcement officers may not use deadly force to apprehend a fleeing misdemeanant. *See Garner*, 471 U.S. at 15, 105 S.Ct. at 1703 (recognizing that common law prohibited the use of deadly force to apprehend a misdemeanant).

In this en banc case, the majority holds that at the time of this incident, the law was not clearly established that law enforcement officers would violate the constitutional rights of a fleeing misdemeanant if, during a high speed chase, the law enforcement officers intentionally rammed the automobile in which a misdemeanant and passenger were riding, thereby causing it to crash, killing the passenger.**

For all of the reasons expressed in the panel opinion reported at 962 F.2d 1563 (11th Cir.1992), *vacated and reh'g en banc granted*, 982 F.2d 472 (11th Cir.1993), I dissent.

HILL, Senior Circuit Judge, dissenting dubitante:

Because I believe that the plaintiffs could state a claim under one reading of the well-

---

that they may not use deadly force against a fleeing misdemeanant. Nevertheless, after this opinion, the law is clearly established that law enforcement officers may not use deadly force to apprehend a fleeing misdemeanant.

pleaded facts in the complaint, I dissent, with some reservation.

As discussed at greater length in my special concurrence in the panel opinion, 962 F.2d at 1572–73, my view is that the defendants would not be entitled to qualified immunity if they deliberately rammed plaintiffs' vehicle intending to injure—and thereby stop—the occupants. Deliberate use of an automobile as a weapon against a fleeing suspect could violate the Fourth Amendment under circumstances analogous to those present in *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). Given the testimony and other evidence presented at the first trial, I have grave doubt that the plaintiffs established, or could establish at a second trial, this constitutional violation. However, the defendants' motion for summary judgment on qualified immunity grounds was decided on the basis of the well-pleaded facts in the complaint, facts to which defense counsel stipulated at the summary judgment hearing despite the fact that the transcript of the first trial was available to counsel and to the court.[1] Because I believe the well-pleaded complaint leaves open a possibility that a constitutional violation occurred, I would not dismiss the case with that possibility unexplored.

My view would not necessarily require that the officers endure a full second trial, for I would have the trial judge resolve factual disputes material to the existence of qualified immunity at the summary judgment—that is, without the intervention of a jury—stage. Trial judges regularly resolve factual issues relevant to the initiation of a legal action, issues which determine whether a party holds the key to the courthouse door. *See,* in various criminal and civil contexts, *United States v. MacDougall,* 790 F.2d 1135, 1142 (4th Cir.1986) (double jeopardy); *United States v. Hogan,* 986 F.2d 1364, 1367 (11th Cir.1993) (mental competence); *United*

States v. Coia, 719 F.2d 1120, 1123 (11th Cir.1983), *cert. denied,* 466 U.S. 973, 104 S.Ct. 2349, 80 L.Ed.2d 822 (1984) (pre-trial motion to dismiss indictment); *United States v. Bent–Santana,* 774 F.2d 1545, 1547–48 (11th Cir.1985) (suppression); *United States v. Gonzalez–Sanchez,* 825 F.2d 572, 578 (1st Cir.), *cert. denied,* 484 U.S. 989, 108 S.Ct. 510, 98 L.Ed.2d 508 (1987) (breach of a plea agreement); *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938) (amount in controversy); *Evans v. Tubbe,* 657 F.2d 661, 663 (5th Cir.1981) (subject matter jurisdiction); *Ryan v. Glenn,* 336 F.Supp. 555, 556 (N.D.Miss.1971) (venue).

Like these issues, qualified immunity relates to whether a suit may or may not proceed. In the oft-quoted words of the Supreme Court in *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985): "The entitlement is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." 472 U.S. at 526, 105 S.Ct. at 2815. The *Mitchell* Court recognized that this and other threshold issues often intertwine with the facts of the case:

> To be sure, the resolution of [qualified immunity] will entail consideration of the factual allegations that make up the plaintiff's claim for relief; the same is true, however, when a court must consider whether a prosecution is barred by a claim of former jeopardy or whether a Congressman is absolutely immune from suit because the complained of conduct falls within the protections of the Speech and Debate Clause.

*Id.* at 528, 105 S.Ct. at 2816.

While the *Mitchell* Court did not explicitly endorse pre-trial fact-finding on issues necessary to the determination of immunity, the trial court in that case had, in fact, engaged

---

1. I am somewhat concerned by the fact that defense counsel stipulated to the well-pleaded facts in the complaint for purposes of the defendants' summary judgment motion despite the fact that the record of a first, full trial was available. I wonder whether this did not amount to asking the court for an advisory opinion. While disposition of a motion under Fed.R.Civ.P.

12(b)(6) often requires that a court accept as true facts presented in a complaint, this necessity falls away where a prior trial has unearthed and displayed all the available evidence in the case. Having raised this concern, I leave it, for the parties have not made it an issue before this court.

in such fact finding. See 472 U.S. at 535, n. 13, 105 S.Ct. at 2841, n. 13; c.f. *Id.* at 557–58, 105 S.Ct. at 2832 (Brennan, J., concurring in part and dissenting in part).

Judicial fact-finding on such issues would ensure that qualified immunity serves as an immunity from suit, particularly in cases of artful pleading supported by less than persuasive evidence. When this initial fact-finding by the court is followed by a denial of immunity and a trial, the defendant may get a second bite at the apple, a chance to persuade the jury to make different factual findings than the judge. This second opportunity would not be unique, however. As long as any ruling remains "in the breast of the court," it is "subject to be amended, modified, or vacated by that court" if further proceedings demonstrate that it is incorrect. *United States v. Benz,* 282 U.S. 304, 306–07, 51 S.Ct. 113, 114, 75 L.Ed. 354 (1931), citing *Goddard v. Ordway,* 101 U.S. 745, 752, 25 L.Ed. 1040 (1880).

With these observations, I dissent.